## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

CRAIG WILLIAMS,                          )
                                         )
                                         )
                      v.                 )
                                         )      1:23-cv-00037
                                         )
GEORGE LITTLE & LAUREL R. HARRY,         )
                                         )
                      Defendant.         )

## OPINION

**Mark R. Hornak, Chief United States District Judge**

Mr. Craig Williams is currently serving a state sentence at the state correctional institution ("SCI") located at SCI Albion in Albion, Pennsylvania. (ECF No 6, at 2.) Mr. Williams brings his Complaint (ECF No. 6), accompanied by a Motion for Preliminary Injunction (ECF No. 3), pursuant to 42 U.S.C. § 1983 for alleged violations of his First Amendment rights and of the Religious Land Use and Institutionalized Persons Act ("RLUIPA"), 42 U.S.C. § 2000cc-1. He challenges a change in policy that alters his access to purchase special halal foods, and as to the group religious observance protocols for two specific religious holidays of his faith at the prison, changes that he says unlawfully interfere with his rights to freely exercise his religious beliefs.

The Defendants, former Pennsylvania Secretary of the Department of Corrections George Little and the current Acting Secretary of the Department of Corrections, Laurel Harry, through their counsel from the Pennsylvania Department of Corrections ("DOC") counter Mr. Williams's Motion for Preliminary Injunction with a Motion to Dismiss for Failure to State a Claim (ECF No.

36), along with their opposition to the grant of preliminary injunctive relief, no matter the disposition of their dismissal motion.

While Secretaries Little and Harry are seemingly sued in both their individual and official capacities, the relief that is the subject of the Motion for Preliminary Injunction is targeted at the application and enforcement of an official DOC policy issued by Defendant Little in February 2022 and first applicable in calendar year 2023 to the situation now before the Court. Former DOC Secretary Little, who authored and promulgated the new DOC policy approximately one year in advance of its effective date, and which is the subject of this lawsuit, is no longer the head of the DOC; Secretary Harry is. Given that the relief now sought at this juncture is injunctive in nature and would have to be implemented by Secretary Harry in her official capacity, for purposes of this Opinion, and unless stated otherwise, the Defendants advance their arguments and are referred to as "DOC."

The central issue before the Court at this point is whether Mr. Williams is entitled to the preliminary injunctive relief he now seeks. Given the priority of that matter, the Court at this juncture considers that Motion, and then also the Motion to Dismiss to the extent that it would impact the consideration of that requested relief. Because there is a substantial overlap between the issues before the Court relative to Mr. Williams's request for preliminary injunctive relief, and the Defendants' assertion that Mr. Williams's Complaint fails to state a claim for relief, those matters will be addressed first.

Both parties have filed briefs and record materials on the pending matters, and both Motions are now ripe for decision. For the reasons which follow, the Motion to Dismiss is DENIED without prejudice, and the Motion for Preliminary Injunction is GRANTED, but only to the extent set forth in this Opinion and accompanying Order.

I.      **BACKGROUND**

This case is about Mr. Williams's asserted desire to continue to observe two key religious holidays (Eid al-Fitr and Eid al-Adha) by he and his fellow adherents of the Muslim faith at SCI Albion paying for and acquiring certain foods which he says are essential to his religious observance of those holidays, and then engaging in communal observance of them in celebratory meals. He says that until 2023, he and his fellow adherents had been able to do so under the auspices of the DOC for several years without impediments, and seemingly without any insurmountable logistical issues in the DOC's operations.

Mr. Williams is a practicing Salafee Muslim, which is a branch of Sunni Islam. (ECF No. 18, at 1.) Mr. Williams has been practicing Islam since 2013. (*Id.* at 2.) Salafee Muslims work to closely emulate the early Muslim generations. (*Id.* at 1.) Because of his adherence to his faith, it is important to Mr. Williams that he celebrate the two most important holidays in Islam, Eid al-Fitr and Eid al-Adha, in a manner consistent with his faith. (*Id.*) For ceremonial meals, prior to 2023 and while in DOC custody, Mr. Williams was able to purchase, with his own funds, traditional halal foods consistent with his practice of Islam to celebrate his religious holidays, including the two most significant of such holidays, Eid al-Fitr and Eid al-Adha. (*Id.*) Prior to January 1, 2023, the DOC had a policy of allowing inmates of different faith groups to engage in ceremonial meals where they could purchase traditional foods for their religious holidays out of their own accounts but under the auspices of the DOC, and to then enjoy the celebratory/observance meals together. (ECF No. 18, at 3.)

On February 24, 2022, Secretary Little issued a memorandum directive ("Little Memo"), which explained that the DOC would be shifting from supporting ceremonial meals in the manner engaged in by Mr. Williams for the observance of the Eid religious holidays to instead permitting

up to two (2) "fellowship meals" annually for every faith group beginning on January 1, 2023. (ECF No. 18-1.) The Little Memo detailed that under this new rule, optional inmate purchased food items will no longer be available for such observances. (*Id.*) Faith groups were instead to choose a meal from the available weekly DOC menu to be their meal for the "fellowship meal" for the two religious holidays they choose. (ECF No. 24, at 7.) Members of each faith group then may eat the "fellowship meal" together and engage in thirty (30) minutes of fellowship time following the meal. (ECF No. 18-1.)

In summary, since the Little Memo went into effect, with one significant exception examined in greater detail below, ceremonial meals with inmate purchased optional menu items for those of Mr. Williams's faith, or others, were no longer permitted or facilitated by the DOC. (*Id.*) Before the change resulting from the Little Memo, inmates of different faith groups were able to celebrate ceremonial religious meals through their own purchase of foods with their own funds and via the DOC which were appropriate for celebrations of their religious holidays. (ECF No. 18, at 3.)

Mr. Williams states the change set out in the Little Memo violates his Constitutional right to the free exercise of his religion under the First and Fourteenth Amendments and as protected under RLUIPA because it prohibits him from celebrating his religious holidays in the way his faith requires. The DOC counters that the change does not lead to those results because Mr. Williams does not have a Constitutional right to celebrate and observe his faith with the specific halal foods that he names (which include halal meats, fried fish, fried rice with eggs, sweet potato or bean pie, carrot cake with icing, pita bread, and salads), that he is still able to celebrate his religious holidays appropriately under the new policy, and that in any event, even if his religious observance rights are being burdened, even substantially burdened, providing (or in Mr. Williams's telling,

continuing to provide) the accommodation that he requests would be so burdensome on the operations of the DOC that it need not back away from the provisions of the Little Memo. (ECF No. 18, at 2.)

The relief that Mr. Williams seeks at this procedural stage of the proceedings is specific and narrow: the DOC's reversion to the processes and procedures for accommodating religious observances relative to ceremonial meals, particularly the Eid holiday meals, that existed prior to the effective date of the Little Memo. In other words, the restoration of the *status quo*. He seeks more wide-ranging legal and equitable relief in his Complaint, matters which need not be addressed at this point.

It is undisputed that Mr. Williams practices the religion of Islam. Mr. Williams is a Salafee Muslim, which is a branch of Sunni Islam. (ECF No. 18, at 1.) He is a registered Muslim in the DOC's Unit Management System. (ECF No. 24, at 8.) Mr. Williams filed this lawsuit *pro se* on February 17, 2023. (ECF No. 1.) Counsel then entered their appearance on his behalf and supplemented the papers Mr. Williams had filed. (ECF Nos. 12, 15, 18.) On the same day he filed suit, Mr. Williams filed a Motion for a Temporary Restraining Order and Preliminary Injunction requesting this Court order the DOC to allow him to at least be able to purchase with his own funds, as he had in the past,  halal meats,[1]  fried fish, fried rice with eggs, sweet potato or bean pie, carrot cake with icing, pita bread, salads with tomatoes, carrots, cucumbers, onions, dressing, and

---

[1] Halal is an Arabic term meaning permissible or lawful. In regard to food, it is the Islamic dietary standard as prescribed by Islamic law. Meat is considered Halal if the meat is slaughtered according to the guidelines in Islamic law. Definition of Halal, Halal Monitoring Committee, https://halalhmc.org/resources/definition-of-halal/.

fruit juices to celebrate the Muslim holidays Eid al-Fitr[2] and Eid al-Adha.[3] (ECF No. 3-1, at 1.) Mr. Williams contends that the standard DOC weekly menu items will not suffice for his celebration of the Eid holidays because they do not include halal meat or other celebratory food items he references in his Motion. (ECF Nos. 3 & 18, at 3.) In essence, Mr. Williams asks the Court to restore the *status quo* through the entry of a preliminary injunction, especially given the time sensitive nature of the upcoming holiday of Eid al-Adha, which this year will fall on June 27, 2023 to June 28, 2023.

After reviewing the papers then of record of the parties, the Court on April 17, 2023 denied the Motion at ECF No. 3 for preliminary relief in the form of a temporary restraining order as it is applied to the Eid al-Fitr holiday without prejudice given that the DOC contacted Mr. Williams to provide him with a halal conforming meal for that holiday which consisted of the standard DOC vegetarian Kosher meal. (ECF No. 28.) In a conference with the Court, the parties appeared to each acknowledge (at least) that as a literal matter, that standard DOC daily kosher meal was not inconsistent with halal. The Court then directed the parties to engage in a period of limited discovery and to file additional briefing and any other relevant motions, and reserved time on its calendar for June 12, 2023, in the event a hearing were required and in light of the upcoming Muslim holiday of Eid al-Adha, which falls on June 27–28, 2023. (ECF No. 35.) The parties then advised the Court that an evidentiary hearing on the matter was not necessary, and they and the Court could and should rely on their briefing and annexed record materials in support of their

---

[2] Eid al-Fitr is the feast that ends the Ramadan fast. In 2023, Eid al-Fitr occurred on the evening of April 20, 2023, continuing to the evening of April 21, 2023. It is undisputed that these are two major religious holidays of significance in Mr. Williams' faith tradition, and that their celebration is of religious significance to the adherents of that faith tradition. It also does not appear to be disputed that the dates of those holidays, for years to come, can be ascertained and known well in advance of their arrival. Islamic Holidays, 2010–2030, Infoplease, January 6, 2022, https://www.infoplease.com/calendars/holidays/islamic-holidays.

[3] Muslims participate in Eid al-Adha during the month of Dhu al-Hijja. In 2023, the Eid al-Adha is to occur on the evening of June 27, 2023, continuing to the evening of June 28, 2023.

respective positions. (ECF No. 39.) In that vein, based on the Court's review of the materials submitted, there appears to be little actual dispute as to the historic facts, but only as to their legal significance. Therefore, the facts as may be set forth in this Opinion constitute findings of fact from the record for purposes of resolving the Motion for Preliminary Injunction, consistent with Fed. R. Civ. P. 52 and 65.

## II.   **MOTION FOR PRELIMINARY INJUNCTION**

### a. **Legal Standard**

Federal Rule of Civil Procedure 65 permits a court to grant a preliminary injunction if the moving party demonstrates a likelihood of success in the litigation, and that he will suffer great or irreparable injury absent an injunction. Fed. R. Civ. P. 65; *Delaware River Port Auth. v. Transamerican Trailer Transp. Inc*., 501 F.2d 917, 919–20 (3d Cir.1974).

To obtain a preliminary injunction, "the moving party must generally show: (1) a reasonable probability of eventual success in the litigation, and (2) that it will be irreparably injured pendente lite if relief is not granted to prevent a change in the status quo." *Acierno v. New Castle Cnty*, 40 F.3d 645, 653 (3d Cir. 1994); *Delaware River Port Auth,* 501 F.2d at 919–20 (3d Cir.1974) (quoting *A.L.K. Corp. v. Columbia Pictures Indus., Inc.,* 440 F.2d 761, 763 (3d Cir.1971)). Moreover, while the burden rests upon the moving party to make these two requisite showings, the district court "should take into account, when they are relevant, (3) the possibility of harm to other interested persons from the grant or denial of the injunction, and (4) the public interest." *Id*. at 920 (footnote omitted). Generally, to show irreparable harm a plaintiff must "demonstrate potential harm which cannot be redressed by a legal or an equitable remedy

following a trial." *Instant Air Freight Co. v. C.F. Air Freight, Inc.*, 882 F.2d 797, 801 (3d Cir.1989).

### b. RLUIPA

The Religious Land Use and Institutionalized Persons Act ("RLUIPA"), 42 U.S.C. § 2000cc-1 "protects institutionalized persons who are unable freely to attend to their religious needs and are therefore dependent on the government's permission and accommodation for exercise of their religion." *Cutter v. Wilkinson*, 544 U.S. 709, 721 (2005). RLUIPA states that the government shall not

> impose a substantial burden on the religious exercise of a person residing in or confined to an institution . . . even if the burden results from a rule of general applicability, unless the government demonstrates that imposition of the burden on that person (1) is in furtherance of a compelling governmental interest; and (2) is the least restrictive means of furthering that compelling governmental interest.

42 U.S.C. § 2000cc-1(a).

A substantial burden under RLUIPA exists where:

> (1) a follower is forced to choose between following the precepts of his religion and forfeiting benefits otherwise generally available to other inmates versus abandoning one of the precepts of his religion in order to receive a benefit; or (2) the government puts substantial pressure on an adherent to substantially modify his behavior to violate his beliefs.

*Washington v. Klem*, 497 F.3d 272, 280 (3d Cir. 2007).

The broader issue of halal foods in prison is not a novel issue in our Circuit. *See Williams v. Morton*, 343 F.3d 212, 218 (3d Cir. 2003) (holding that the prison serving vegetarian meals in the daily meal line, rather than halal meat meals, is rationally related to the prison's interest in simplified food service, security, and staying within the prison's budget and affirming the District Court's conclusion that providing halal meat meals cannot be provided at a *de minimis* cost); *Riley v. DeCarlo*, 532 Fed. Appx. 23 (3d Cir. 2013) (affirming the holding that requiring the daily

serving of halal meat would have a deleterious impact on other inmates, prison officials, and prison resources, and that the plaintiff did not meet his burden to show that the lack of a daily halal meat diet substantially burdened his religious practice); *Adekoya v. Chertoff*, 413 Fed. Appx. 85, 88 (3d Cir. 2011) (holding that providing a vegetarian meal to Muslim inmates is constitutionally acceptable).

But the Court notes that this appears to be the first case in the Circuit reaching the merits of the claims asserted here as to the Little Memo and dealing specifically with Eid holiday celebrations relating to the provisions of the Little Memo, and the methods by which the DOC is implementing it as to Mr. Williams, including in the context of the DOC's protocols relative to specialty food items/group observances in other faith traditions.

### c.  Analysis

#### i.  Success on the Merits

Mr. Williams brings statutory and Constitutional claims. As is appropriate in such circumstances, the Court will consider in the first instance whether there is a likelihood of success on his statutory claims, and if there is, the Court would not need to reach his Constitutional claims at this juncture.

To analyze whether Mr. Williams will likely succeed on the merits, the Court must first determine whether he would likely prevail under his RLUIPA claim, and principally whether the directives contained in the Little Memo place a substantial burden on Mr. Williams's exercise of his religion. And the analysis of the likelihood of success on the merits factors necessarily also informs the question of whether Mr. Williams has asserted a plausible claim for relief, one of the bases upon which the Defendants move to dismiss. So, there is a functional overlap of those two procedural issues.

Mr. Williams argues that the denial of his request to continue to purchase with his own funds traditional halal foods consistent with his religious beliefs to celebrate the Islamic holidays of Eid al-Fitr and Eid al-Adha places a substantial burden on his religious exercise because he now has to choose to violate his religious beliefs by celebrating his holidays in a way that "disrespects core tenants of his religion, or forgo altogether his participation in the two most significant holidays of his faith." (ECF No. 18, at 6.)

Mr. Williams explains that the DOC has placed substantial pressure on him to substantially modify his behavior and violate his beliefs because the DOC's offer of only regular menu items in substitution for traditional Islamic halal foods for the observance of those two specific holidays of particular significance in his faith violates his religious beliefs and is functionally the same as his being prohibited from any sort of celebration that actually conforms with and is consistent with his religious beliefs. (*Id.* at 7.) Since the record at this point supports that Mr. Williams sincerely believes that halal meat and other customary Islamic foods are part of his holiday feast celebrations, he argues that now withholding, pursuant to the Little Memo, the DOC's previously allowed access to those foods with his own funds prevents a proper celebration of the two referenced holidays, which therefore violates his rights as secured by RLUIPA. (ECF No. 42, at 7.)

Mr. Williams argues that the denial of the foods he requests for the Eid holidays places a substantial burden on him mainly because it puts him in a situation where he must either violate his religious beliefs by celebrating the holidays in a manner that disrespects the tenets of his religion, or he must choose to not participate altogether. (ECF No. 18, at 6.) Mr. Williams emphasizes that stricter observance of these two particular holidays is important because they are the two most significant holidays of his faith, and participation in the Eid holidays meals is central

10

to the practice of his religion. (*Id.* at 6–8.) Mr. Williams states that the foods he requests are not a preference, but they are actually essential to his exercise of his faith as to those two holidays. (ECF No. 42, at 5.)

Further, Mr. Williams argues that the DOC cannot meet its burden of establishing that this change is the least restrictive means to achieve a compelling government interest because the DOC has for years successfully accommodated religious ceremonial meals, including for the two referenced holidays, and allowed purchase of foods from outside vendors, including by him, for over a decade. (ECF No. 18, at 9.) And as noted below, the DOC's 2023 policy for the observance of the Passover holiday for Jewish inmates would appear to mirror the methods by which the DOC had previously permitted Mr. Williams to observe the Eid holidays prior to the effective date of the Little Memo.

Mr. Williams begins his rejoinder to the DOC's arguments by stating that the DOC's asserted administrative and financial burdens do not rise to the level of a compelling government interest, especially because the DOC has not provided record evidence to show the specific nature and magnitude of any financial burden of the kind required by RLUIPA to demonstrate a compelling government interest. (ECF No. 42, at 8.) Further, Mr. Williams argues that the DOC's financial burden appears to be minimal at worst because inmates pay the full cost from their own funds for any optional menu items necessary for a religious observance meal. (*Id.*)

Beyond that, Mr. Williams points to the DOC's recently issued 2023 Passover Memorandum (ECF No. 42-9) whereby Jewish inmates who wish to observe Passover receive certain "Kosher for Passover" foods purchased from the outside vendor for inclusion in the Passover Seder, using DOC rather than personal funds, and which are foods that are not on the weekly DOC menu. (ECF No 42, at 16.) So, Mr. Williams argues, the now-advanced

administrative burdens of any of the prior policy must not be so significant as to justify eliminating the entire ceremonial meals program to the degree set out in the Little Memo if the DOC still provides this essentially identical service (arguably in an enhanced fashion) for Passover. (*Id.*) As that argument goes, in effect, Mr. Williams contends that the actual "least restrictive means" for the provision of meals consistent with religious observances is the mechanism that the DOC has now put in place for Passover observances, which appears to the Court to be a mirror image of the observance procedures in place for the Eid holidays prior to the effective date of the Little Memo.

The DOC argues that its elimination of the ability of Mr. Williams and others to purchase optional halal food items from their own funds for the observance of the two holidays in question does not rise to a substantial burden on Mr. Williams's religious beliefs because food restrictions do not inherently curtail inmates right to free exercise of religion due to the DOC's willingness to provide categories of meals via its standard weekly menu that at least minimally comply with the tenets of multiple religions. (ECF No. 24, at 13.) The DOC argues that the foods Mr. Williams requests may be traditional to his faith celebrations and observances of the two major holidays he references, but that they are not *necessary* for him to access to fully practice his faith. But the DOC's argument appears to be only that, without any factual assertions to rebut Mr. Williams's contentions that the Eid holidays are simply different in his faith tradition, carrying with them a heightened method of observance, beyond what may be required day to day. The DOC nonetheless goes on to say that it changing its policies to disallow his purchase of them for group meals in observance of the two referenced Eid holidays does not place a substantial burden on his religious practices. (*Id.* at 14.) Further, the DOC explains that just because it previously allowed for the purchase of foods for such religious observances does not mean that it must continue to provide this as an option. (*Id.*)

The DOC then also asserts that its new implementation of the "fellowship meals" approach as set out in the Little Memo is in fact and law the least restrictive alternative for faith groups to celebrate their holidays while in a prison institutional setting. (*Id.* at 16.)

In the Third Circuit, the lead cases dealing more generally with issues involving the provision of halal meat in prisons are *Williams* and *Riley* noted above.[4]  In *Williams*, the court held that the daily serving of vegetarian meals, rather than halal meals with halal meat, is rationally related to the legitimate penological interests in simplified food service, security, and staying within the prison's budget. 343 F.3d at 218.  In *Riley*, the court held that the plaintiff failed to meet his burden that the DOC's decision to not serve him a halal meat diet substantially burdened his religious exercise under RLUIPA. 532 Fed. Appx. at 28. The *Riley* Court further held that the defendants there had demonstrated the deleterious impact that serving halal meat would have on other inmates, prison officials, and prison resources and noted that a vegetarian diet satisfies halal. *Id.*

Other Circuits have considered similar claims related to inmate food service in the religious context. In *Ackerman v. Washington*, a Jewish prisoner brought an action challenging a prison policy of serving a vegan diet to inmates who keep Kosher. 16 F.4th 170, 176–77 (6th Cir. 2021). The Sixth Circuit stated that this policy substantially burdened religious exercise because in the religious-food context, prohibiting access to the practice of eating specific ceremonial foods substantially burdens the religious practice. *Id.* at 184 (citing *Haight v. Thompson*, 763 F.3d 554, 565 (6th Cir. 2014). The *Ackerman* court noted that once a plaintiff makes out a *prima facie* case

---

[4] It is important to note that these Third Circuit cases predate the Little Memo, that the precedential decision in *Williams* did not implicate the provisions of RLUIPA, and each dealt with claims related to the day in and day out provision (or not) of prison meals that included halal meat as opposed to the specific religious holiday observances at issue here, and neither had to consider the implications of the DOC's current 2023 Passover memo. *Williams,* as a precedential decision of our Court of Appeals, is of course controlling on this Court as to its holding and will be treated as such.

under RLUIPA, the burden shifts to the government to show that the burden imposed on it, and the means that it applies, pass strict scrutiny. *Id.* at 187. These Sixth Circuit cases dealt with holidays or ceremonial meals. But in the everyday context, other courts of appeal have held that to pass muster under RLUIPA, there needs to be an option for a halal conforming meal. *See Abdulhaseeb v. Calbone*, 600 F. 3d 1301, 1316–17 (10th Cir. 2010) (holding that the prison's failure to provide a halal diet either prevents the plaintiff's religious exercise, or places substantial pressure on him not to engage in his religion).

The issue in this case is whether the Little Memo's processes substantially burden Mr. Williams's exercise of his sincerely held religious beliefs in the context of the two most significant religious holidays for which he asserts, and the record supports, are to be and were celebrated in a specific enhanced fashion prior to the Little Memo. Thus, the Court has no occasion at this point to consider these issues in the context of everyday prison food service, and in any event as noted above, the Third Circuit's *Williams* decision would be controlling precedent on the issue of the asserted necessity of halal meats in those circumstances, but then as to Constitutional claims. And that Court's decision in *Riley,* while non-precedential, is nonetheless persuasive authority as to the impact of RLUIPA claims as to everyday prison meals. The claims here are distinctly more focused and will be addressed only in the context of the provision of the enhanced halal meals, and observance activities, as centered on the Eid holiday observances.

The Court concludes that since the DOC has mainly alleged administrative and financial burdens associated with allowing Mr. Williams (and others) to celebrate those ceremonial meals as they did in the past, and with optional halal food items paid for by inmates, the financial burden does not appear to be so significant such that the Little Memo is now the "least restrictive means" for fulfilling the DOC's concerns. And while the administrative tasks it now relies on are asserted

14

to be unduly burdensome so as to support the changes implemented by the Little Memo and as explained by Reverend Ulli Klemm's, the Religious Services Administrator at the DOC, in his declaration, (ECF No. 24-1) the Court concludes that those assertions do not rise, on the somewhat modest record advanced by the DOC, to becoming a compelling government interest and/or that the Little Memo is the least restrictive means of fulfilling them in the specific and limited context presented here. Here's why.

While the DOC expresses that in the past, it had to foot the bill for extra costs associated with storage, shipping, and handling of the optional menu items, Mr. Williams states that inmates were not aware of instances where their personal fund contributions did not cover all costs of the observances at issue, and the record advanced by the DOC during the focused discovery allowed by the Court fails to set forth such with any specificity. (ECF No. 42, at 9.) In these regards, the "facts" advanced by the DOC, as opposed to broad generalizations, are sparse. (ECF No. 24, 2–9; ECF No. 37, at 2–3.)

This, coupled with the analysis set out below as to the DOC's 2023 Passover Memo, leads the Court to conclude that the DOC changing its policy by virtue of the Little Memo has not been demonstrated, from the standpoint of "administrative necessity," to be the least restrictive means for achieving their government interest, whether compelling or not, because the DOC the record does not at this point back up the DOC's generalized assertions. And it does not stretch the imagination to discern other approaches the DOC could have readily considered. It could have simply incrementally increased the costs of the optional menu items as charged to the inmates to cover those extra collateral costs; in essence, a "service charge" for any actual (rather than speculative) out of pocket costs incurred by the DOC for the receipt and processing of those foods. The Court reaches this conclusion based on the reality that a simple charge added to the costs of

the optional food items could indeed cover shipping and handling costs, but the DOC has not provided an estimate of how much this has ever actually cost the DOC "out of pocket." And, as noted below, the DOC's position on this point does not address at all any such costs which would appear to apply in a like manner to the DOC-purchased "Kosher for Passover" Seder foods under the DOC's 2023 "Passover Memo." And in the same vein, the administrative actions outlined by the DOC in its Reply Brief would appear to apply with similar force to the implementation of its Passover Memo (ECF No. 43 at 4-6). All in all, the Court concludes that the DOC has not at this point demonstrated that it has met its burden to at least show a compelling government interest that was met via the Little Memo and that it used the least restrictive means to meet that interest.

The DOC advances other arguments that it says demonstrate that the Little Memo is in fact and in law the least restrictive means to accommodating Mr. Williams' religious beliefs and observances. Those reasons advanced by the DOC either ring hollow in light of its procedures pursuant to the Passover Memo, or are based on broad assumptions and generalizations, rather than specific facts in the record.

The DOC's principal argument boils down to a "if we do it for you, we'll have to do it for everyone" argument, based on what it says are the over one-hundred-and-fifty (150) acknowledged religious faiths among its inmates, and handling matters as the DOC did as to Mr. Williams and those celebrating the holidays of Eid al-Fitr and Eid al-Adha with optional foods purchased with their own funds, apparently for years, would now be untenable, which therefore resulted in the new methodology set out in the Little Memo. It also says that it would be a demonstrable administrative burden, with attendant costs to the public, if the *status quo* pre-Little Memo were to be restored, even if only as to the observance of the two specific holidays which are the focus of this case.

16

But the facts in the record as advanced by the DOC appear to reveal that in the twelve years 2007 to 2018, across the entire DOC system, there were 85 ceremonial meal requests, or about seven (7) per year, celebratory meal observance requests. (ECF No. 43, at 5.) But more than anything, and most notably, the DOC's position does not at all confront the reality that even after its issuance in 2022 (and the 2023 effective date) of the Little Memo, the DOC has this year (2023) issued a new policy directive for broad meal and observance accommodations for the observance of Passover, including the provision of "Kosher for Passover" meals and foods, and enhanced Kosher meals for the Seder observance, specialty foods that have to be specially ordered and purchased with DOC funds, and then facilitating express and distinct religious gatherings in observance of those holidays, especially including the provision at DOC costs of foods for the Passover Seder. And the policies and approaches set out in the Passover Memo appear to directly implicate the same matters set out in the Little Memo. But the Passover Memo, issued on February 15, 2023, a year after the Little Memo was issued, does not make reference to the Little Memo, its principles, nor to the administrative complexities and asserted challenges that the DOC now relies on to oppose the Mr. Williams' claims. As to that last matter, the Passover Memo instead references a prior policy memo from Secretary Little on similar topics dated October 4, 2021. (ECF No. 42-9 at 5).

The Passover Memo was by its terms effective as to Passover this year (April 5–13, 2023). (ECF No. 42-9.) The DOC's Reply Memorandum (ECF No. 43) in opposition to the preliminary injunction Motion and in support of its own Motion to Dismiss  does not  mention, let alone endeavor to address,  that differences in treatment of vital faith traditions as between Mr. Williams religious observance requirements, and those that are authorized by the DOC's current Passover Memo, nor does it explain in any way why the administrative burdens, if any, attendant to those

17

Passover religious observances, including via optional meals, special celebratory foods, and dedicated religious services, are manageable, but those attendant to the faith tradition of Mr. Williams (and which appear to be functionally identical on both concept and implementation) are not. Nor does it endeavor to explain why there is an administrative "parade of horribles" arising from the potential accommodation of the many acknowledged faiths of other inmates when it considers the halal food and Eid holiday observance requests of Mr. Williams, but such do not exist as stemming from the special accommodations on the same matters as set out in its 2023 policy memo as to Passover observances.

To be clear, the DOC's seemingly extensive efforts via the 2023 Passover Memo to support the religious observances of Jewish inmates for Passover are laudable and should be considered in the most positive light. The fact that the DOC has worked with such expanse and precision in those regards is to its credit. And the Court is, of course, cognizant of the complex correctional obligations with which the DOC is charged, and the challenges that it confronts in fulfilling them. And the Court's extensive reference to the provisions and implications of the matters set out in the Passover Memo are not a criticism in any way of the accommodations for that important holiday observance as set out in that Memo, nor some sort of judicial "whataboutism." But these matters must nonetheless be considered and addressed in the context of the statutory and caselaw principles applicable here.

The Court's analysis on this point is a consideration of what appears to be plain: the DOC on the one hand contends that the Little Memo was both essentially compelled by administrative necessity and is the "least restrictive means" for addressing varied religious observances including of the Eid holidays by Mr. Williams, yet on the other hand, does not advance similar concerns as to the extensive operational protocols embodied in the Passover Memo. The DOC's failure to

engage, at all, with the arguments advanced by Mr. Williams as to the implications of the 2023 processes for Passover observances, including the DOC's authorizations for "group purchases" of foods for those observances from inmate funds, the provision of certain of those Seder observance foods at DOC expense, and the provisions for distinct group religious observance of that critical religious holiday, fundamentally calls into question the DOC's arguments that restoring the *status quo* as the two significant Eid holidays which are the subject of this action would be an untenable financial and administrative burden to the DOC, or would interfere with necessary penological needs, or would generate concerns about disparate treatment of those of other faiths that the DOC appears to argue animates the Little Memo. And the realities as to the differential approaches generated by the Little Memo and the Passover Memo, which remain unexplained in the briefing of the DOC, cast doubt on the DOC's position that restoring the status quo as to the observance of the Eid holidays would be "unmanageable" (ECF No. 43 at 4).[5]

Nor has the DOC offered any explanation as to why the Passover observance accommodations fall outside of the terms of the Little Memo, or why the provisions of the Passover Memo, which would appear to be fully consistent with the *status quo* Mr. Williams seeks to restore for the Eid holiday, do not implicate the very same "slippery slope" arguments the DOC advances in opposition to the relief Mr. Williams seeks. That silence is telling on the issues of administrative burdens on the DOC, and as to whether the Little Memo is the least restrictive means for addressing such DOC operational concerns as to the Eid holidays.

Considering the record as it now exists, the DOC has not demonstrated the actual existence or magnitude of a burden on its operations were the *status quo* to be restored as to accommodating

---

[5] To the extent the DOC's position is that the "fellowship meals" approach actually supports greater inmate participation, it advances no basis to conclude that this is an "either/or" situation, and certainly salutary and valuable enhancements arising from the Little Memo could continue, as restoring the status quo as to the Eid observances should not be a detriment to those DOC decisions. See ECF No. 43 at 6-7

Mr. Williams's religious observances for the holidays of Eid al-Fitr and Eid al-Adha. And the existence and implementation of the DOC's Passover protocols demonstrates, on this record, that the means chosen via the Little Memo are not demonstrated to be the "least restrictive means" for addressing the administrative burdens the DOC asserts.

Therefore, the Court concludes that Mr. Williams has demonstrated a substantial likelihood of success on the merits, at least as to his statutory RLUIPA claim.

ii.   Irreparable Harm

Next, having concluded that the directive from the Little Memo likely places a substantial burden on Mr. Williams's exercise of his religion, the Court must determine if the burden leads to Mr. Williams experiencing irreparable harm.

Irreparable harm is established by showing that the plaintiff will suffer harm that "cannot be redressed by a legal or an equitable remedy following trial." *Instant Air Freight Co. v. C.F. Air Freight, Inc.*, 882 F.2d 797, 801 (3d Cir. 1989) ("The preliminary injunction must be the only way of protecting the plaintiff from harm"). The plaintiff must show immediate irreparable injury, which is more than just serious harm. *ECRI v. McGraw-Hill, Inc.*, 809 F.2d 223, 226 (3d Cir. 1987).

Mr. Williams argues that definitionally he experiences irreparable harm because the deprivation of a constitutional right alone constitutes irreparable harm. (*Id.* at 12.) More specifically, Mr. Williams states that the irreparable injury results from his needing to choose from two options that both violate his free exercise of religion: attend a feast lacking necessary celebratory foods, or not attend at all. (*Id.* at 13.) The DOC argues that Mr. Williams has no constitutional or statutory right to have the specific foods he names, especially given that Mr.

Williams is presently provided a halal conforming meal by the DOC by the availability of a daily Kosher meal, which also complies with the principles of halal. (ECF No. 24, at 17.)

The daily Kosher meal includes peanut butter and jelly, bread, and cereal for breakfast. For lunch, the Kosher meal is peanut butter and jelly, fruit, and graham crackers. For dinner, the Kosher meal includes either cottage cheese or bean salad, jelly, bread, and fruit. (ECF No. 42-3, at 19–21.) Some lunch meals are different in that the DOC at times offers a salad instead of peanut butter and jelly. (*Id.*)

The menu for Passover varies from the daily Kosher menu in that it includes baked potato. (*Id.* at 63.) The other foods included in the Passover meal are cottage cheese, fruit, graham crackers, and peanut butter. (*Id.* at 63.) However, the special Kosher for Passover meals under the DOC's 2023 Passover Memo also include Seder meals provided by the DOC which include hardboiled egg, walnuts, grape juice, and celery. (*Id.* at 64–66.) The DOC provides these additional Kosher foods for the Passover Seder at its own cost, but under the Little Memo no longer allows inmates including Mr. Williams to purchase, through their own funds, additional foods for other religious holidays. And when given the opportunity to explain that dichotomy in its Reply Brief, and why the Passover Memo is not inconsistent with what it says are the major obstacles to correctional operations that necessitated the Little Memo, the DOC did not address it. (ECF No. 43).

The Court finds the reasoning in *Opulent Life v. City Holly Springs* particularly persuasive in this instance. 697 F.3d 279, 295 (5th Cir. 2012) (citing *Elrod v. Burns*, 427 U.S. 347, 374 (1976)). In that case, the Fifth Circuit reversed a denial of a preliminary injunction for failure to establish irreparable injury where the plaintiff alleged violations to his First Amendment and RLUIPA rights. *Id.* at 295. The Fifth Circuit held that a claim alleging a deprivation of

constitutional rights constitutes irreparable harm under RLUIPA because "RLUIPA enforces First Amendment freedoms" and requires a broad application. *Id. See Tenafly Eruv Ass'n, Inc. v. Borough of Tenafly*, 309 F.3d 144, 178 (3d Cir. 2002) ("[l]imitations on the free exercise of religion inflict irreparable injury"); *Al Falah Cntr. v. Township of Bridgewater*, 2013 WL 12322637, at *19 (D.N.J. Sept. 20, 2013) (relying on the reasoning in *Opulent Life* to hold that the plaintiff demonstrated irreparable harm by alleging injuries to religious exercise). Therefore, the Court concludes that Mr. Williams has established irreparable harm for the purposes of his preliminary injunction motion.

### iii.   Possibility of Harm to Others

Mr. Williams argues that the DOC will not suffer significant harm if the preliminary injunction is granted because the institutional costs of the request made by Mr. Williams will be minimal, at most, and in any event, the relief he seeks is a return to the *status quo ante*, a situation as to which the DOC has not demonstrated any actual tangible incremental costs. (ECF No. 18, at 14.)

The DOC explains that there were several challenges it experienced with its prior ceremonial meal policy which led to the changes wrought by the Little Memo. The challenges it asserts included searching for vendors to secure pricing on unique foods and running into supply chain challenges; inmates having unrealistic expectations of food price increases; prison chaplains determining if the inmates who provided cash slips actually qualified for ceremonial meals as a matter of a sincerely held religious belief; administrative tasks such as informing inmates if they did not have enough funds in their account to purchase the foods or securing requested foods for indigent inmates; creating secure locations for the foods when delivered; dealing with running out

of the foods; complaints on food quality from inmates; dealing with the funds of inmates who paid for the foods but were subsequently transferred. (ECF No. 24, at 4.)

Moreover, the DOC states that the biggest issue with the way the ceremonial program worked previously was the large number of ceremonial meals that inmates requested. (*Id.*) Coupled with this, the DOC explains that various inmates have claimed that over eighty (80) different types of foods were required for their ceremonial meals. (*Id.* at 5.)

While the Court acknowledges the potential for the financial and administrative burdens the DOC says that it experienced as part of the ceremonial meals program in the past, the Court does not agree with the DOC that the record as it now exists reveals that these burdens are so onerous that they cannot be reasonably addressed in accord with legitimate correctional needs and the applicable statutory requirements. The DOC has demonstrated that they can be, at least in a way that the DOC finds agreeable. Most notably, they are not so burdensome that it cannot implement and then continue with the program that it now implements to provide such as to Passover meals. (ECF No. 42-2.) The DOC acknowledged that there are differences between the broader Passover meal and the regular Kosher meal, though limited to the provision of a baked potato and milk. (ECF No. 42-3, at 63–65.)

But the record also reveals that the first day of the Passover meals includes a particularized Seder meal that had hardboiled eggs, walnuts, grape juice, and celery. (*Id.*) These are not regular DOC menu items and for these purposes appear to be fully analogous to the "special foods" that the DOC says would trigger the plethora of the administrative challenges catalogued above in the context of other faith observances. It offers no fact-based explanation as to why providing the specific "Kosher for Passover" meals noted, and in particular the more expansive Seder meals, is "doable" without the undue administrative challenges it now catalogues yet implementing what

appears to be a directly analogous meal situation for Mr. Williams for the two specific Eid holidays noted is administratively untenable. Additionally, the DOC acknowledges that for the past four to five years, it has solely used Aramark as a food vendor, even for religious meals and even for the halal foods referenced by Mr. Williams and purchased with inmate personal funds, so using one outside vendor does not seem to have been an unduly onerous an administrative task. (*Id.* at 38–40.)

And beyond that, the DOC has not advanced a record to support the necessity of it using the somewhat blunter instrument of the Little Memo to address the administrative burdens it now cites as to the Eid holiday observances. For instance, it does not indicate that it could not squarely meet each of the catalogued perceived inmate complaints by setting fixed dates for food designations and orders well in advance of the two holidays at issue here, dates known years in advance; collecting inmate funds in an amount slightly higher than the price at the time of ordering to cover potential cost increases, with after the fact refunds being credited to the inmates account; clear and direct statements that if the DOC's food supplier simply cannot provide the foods ordered because they suddenly become unavailable, the DOC will not be responsible.

To be clear, this is not some effort by the Court to run the DOC's business, but instead are simply commonsense questions a reasonable observer would pose in the face of the DOC's litany of perceived difficulties, especially since it seems to eschew any such difficulties relative to the implementation of the Passover protocols. On the record here, each of the administrative burdens the DOC now advances would appear to obtain equally as to its Passover policy, but seemingly without the operational tumult that the DOC now posits would exist were Mr. Williams's Eid holiday observance requests accommodated.

Given this, the Court agrees with Mr. Williams on this point. The Court concludes that eliminating the ceremonial meal/observance program across the board for the Eid holidays has not been demonstrated on this record to be the least restrictive means for achieving the government's asserted administrative interests. (ECF No. 43, at 4.) Given this context, the Court cannot conclude that granting the specific limited relief sought here, the resumption of the *status quo* as to the observance of the two Eid holidays at issue now by Mr. Williams and those of the same religious faith will cause the asserted harm to the public's interests, and certainly not to the degree that would counsel against the grant of such relief.

iv.  Public Interest

Mr. Williams argues that the public interest strongly favors granting Mr. Williams's motion because it would further the purpose of Congress's intent when enacting RLUIPA by enforcing a protective standard for prisoner religious rights as they concern religious diets in conjunction with the observance of the two specific holidays at issue here. (ECF No. 18, at 14.)

The DOC argues to the contrary that the public's interest in maintaining safe and orderly prisons that make sound use of government resources favors denying Mr. Williams's request for relief. (ECF No. 24, at 18.) The DOC explains that the prior ceremonial meals practice was one that was unable to be expanded to include all religious groups within the DOC in a fair and orderly way due to the many administrative challenges the DOC says that has faced (or which in actuality it suggests it may have to face) in the program's implementation. (*Id.*) The DOC says that it often had to pay the price for problems dealing with the interruptions in the food supply or process issues that resulted from the implementation of the ceremonial meals. (*Id.*) The DOC argues that it considers all inmates when making significant DOC decisions, and there were a number of factors considered when the DOC made this decision. (*Id.* at 19.)

The Court acknowledges that the DOC may have had to go over administrative hurdles to make the ceremonial meals process work for Mr. Williams and those observing the Eid holidays, but the Court is not convinced, given the 2023 Passover Memo (ECF No. 42-9), that these administrative burdens were (or more accurately have become) so onerous for the DOC so as to rise to a compelling government interest. The Passover Memo indicates that there will be "special foods" provided to those inmates who are registered as the six (6) designated Jewish or Christian faiths mentioned in that Memo. (ECF No. 42-9, ¶¶ 1, 3.) It appears that there was quite a bit of internal coordination as to the Passover meals with the DOC's chaplaincy program directors, the rabbi/Jewish chaplain, and the Corrections food service manager. (*Id.* at ¶¶ 2–4.) Further, the Passover observance spans nine (9) days and includes two (2) Seder rituals, so the DOC was working to provide these accommodations for a period of over a week with two particularly events of high religious significance. (*Id.* at ¶ 5.) Inmates were given the option to either receive Kosher for Passover religious meals, or purchase Kosher for Passover religious foods. (*Id.* at ¶¶ 5–7.) If an inmate chooses to purchase Kosher for Passover religious meals, each eligible inmate may purchase up to six one-pound boxes of Kosher for Passover matzah. (*Id.* at ¶ 6.) This process is facilitated by the chaplain's office and is appears to be organized in the same way ceremonial meals as to Mr. Williams were previously organized: the office will collect cash slips, and the office will distribute the boxes of Kosher for Passover Matzah to the inmates who paid for them. (*Id.*) For the non-purchase option, the food preparation for the nine days requires the cooking and storing the food in Kosher-approved appliances and even boiling the utensils prior to use in food preparation. (*Id.* at ¶ 7.) Further, the Passover memo states: "Kosher for Passover matzah, served as part of the Kosher for Passover religious meals, and which is used for the Ritual Seders, will be purchased and paid for by Corrections Food Services." (*Id.*) There were also two traditional ritual

Seders on each of the first two nights of Passover where the DOC paid for and provided: horseradish, haroset, one-piece fresh parsley or one-piece celery stalk, salt water, one roasted egg, kosher for Passover matzah, and grape juice. (*Id.* at ¶ 10, 12.) The end of the Passover memo states that the Jewish faith can select to have Passover as a "fellowship meal."[6] (*Id.* at ¶ 14.)

And according to the Food Service Manager at the SCI Albion location, the menu for Passover was provided by the central office of the DOC and it included foods not usually on the Kosher menu. (ECF No. 42-3, at 64.) The Seder meal was provided and paid or by the DOC. (*Id.* at 65.) Rev. Klemm explained further in his deposition that the DOC makes adjustment for Ramadan as well, but he did not expand on how the accommodations compare in their processes. (ECF No. 42-8, at 80–83.)

But it also seems clear to the Court that the amount of extensive planning and coordinating that would have to have taken place to support these multiple nights of Passover observance meals would by necessity be considerable. In addition, the DOC pays for certain parts of the requisite extra food, at no cost to the involved inmates. The Court finds it difficult to reconcile what appear to be the extensive administrative tasks the DOC would need to accomplish to fulfill the objectives in the Passover Memo with the position that the DOC is now claiming as to Mr. Williams's request, i.e. that it is simply too burdensome to allow inmates to purchase their own food from an optional food menu item to be supplied by the same single vendor, Aramark (which DOC uses for all of its meals) in order for inmates to have ceremonial halal meals as they observe the Muslim holidays of Eid al-Fitr and Eid al-Adha. And as a matter of logic, the DOC's articulated basis for the Little Memo, namely "if we do it for you, we have to do it for everybody" seems to evaporate in the

---

[6] It would appear to the Court that all of the logistics that the Passover Memo outlines and appears to resolve also map onto the litany of difficulties that the DOC posited in its opposition to the grant of a preliminary injunction (ECF No. 24, at 2–4). Thus it would appear that however complicated such matters are in real life, the DOC has figured out how to deal with them in a correctional setting as set out in the Passover Memo.

context of the Passover Memo's provisions. Finally, a comparison of the logistics and protocols set out in the Passover Memo as to observances of that holiday with the DOC's "Plan of Action" for the observance of the Eid holidays in 2022 does not appear to demonstrate that the administrative burdens as to the Eid observances were more onerous or complicated than those attendant to the observance of Passover. (compare ECF No. 42-10, at 55-68 with ECF No. 42-9).

Given this record, the Court concludes that Mr. Williams has met his burden of establishing the likelihood of success on the merits of his statutory claim, and the other preliminary injunction factors cut substantially in favor of the grant of a preliminary injunction. Therefore, the Court concludes that the directive in the Little Memo likely violates RLUIPA as to the observance of the Eid holidays because Mr. Williams has established a substantial burden on his religious exercises as to the observance of the two specific holidays at issue here, and the DOC has not shown a compelling government interest that the Little Memo addresses with the least restrictive means for accomplishing that interest that justifies the change in policy. Because the Court concludes that the relief that Mr. Williams seeks via his Motion for Preliminary Injunction is supported under RLUIPA, it need not reach the asserted Constitutional basis for that relief.[7]

---

[7] This relief is narrowly focused on the holidays of Eid al-Fitr and Eid al-Adha at SCI-Albion. In its Reply, the DOC states, correctly, that the Prison Litigation Reform Act ("PLRA"), 18 U.S.C. § 3626, limits this Court's ability to issue injunctions involving conditions in prisons. (ECF No. 43, at 2.) However, this Court's narrow holding is permissible under the PRLA because it extends no further than necessary in that it only applies to the two holidays at issue here, and does not generate or mandate new procedures or activities in those regards by the DOC. Instead, it simply requires a return to the state of affairs that obtained as to those two specific holidays prior to the issuance of the Little Memo, and to what appears to be as a functional matter the same system that has been announced and implemented in the Passover Memo.

### III.    <u>MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM</u>

The DOC filed a Motion to Dismiss Mr. Williams Complaint for failure to state a claim. (ECF No. 36.) In its brief accompanying the Motion, the DOC argues that Mr. Williams's RLUIPA and Constitutional claims should be dismissed because no substantial burden is placed on his ability to practice his religion by Little Memo. (ECF No. 37, at 4.) Second, the DOC argues that Mr. Williams's First and Fourteenth Amendment claims should be dismissed because Mr. Williams has no Constitutional right to halal meat or other customary food items at any time, including for the two holidays at issue. (*Id.*) Third, the DOC argues that Mr. Williams's claims should be dismissed because the Defendants are entitled to qualified immunity.

### a.  Legal Standard

Under Federal Rule of Civil Procedure 12(b)(6) a court may dismiss a complaint for "failure to state a claim upon which relief can be granted." "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements," are not enough to survive a Rule 12(b)(6) motion. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). Rather, a plaintiff's factual allegations must "raise a right to relief above the speculative level" and state a plausible claim for relief. *Twombly*, 550 U.S. at 555.

In reading the complaint, the court should "accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009) (quoting *Phillips v. County of Allegheny*, 515 F. 3d 224, 233 (3d Cir. 2008)). "[C]ourts have an obligation in matters before them to view the complaint as a whole and to base rulings not upon the presence of mere words but, rather, upon the presence of a factual situation which is or is not justiciable." *Doug Grant, Inc. v. Greate Bay Casino Corp.*,

232 F.3d 173, 184 (3d Cir. 2000) (quoting *City of Pittsburgh v. W. Penn Power Co.*, 147 F.3d 256, 263 (3d Cir. 1998)).

The Third Circuit further guides lower courts to utilize a three-part framework in analyzing a 12(b)(6) motion. *See Malleus v. Geor*ge, 641 F.3d 560, 563 (3d Cir. 2011). First, the court shall "identify[] the elements of the claim." *Id.* Second, the court shall "review[] the complaint to strike conclusory allegations." *Id.* Third, the court shall "look[] at the well-pleaded components of the complaint and evaluat[e] whether all of the elements identified in part one of the inquiry are sufficiently alleged." *Id.* If the facts alleged in the complaint "show" that the plaintiff is entitled to relief, the court should deny the motion to dismiss. *See Fowler*, 578 F.3d at 210–11.

In ruling on a motion to dismiss, the only documents a court may consider are "the complaint, attached exhibits, matters of public record, and undisputedly authentic documents not attached to the complaint if the complainant's claims are based on those documents." *Panthera Rail Car LLC v. Kasgro Rail Corp.*, 985 F. Supp. 2d 677, 683 (W.D. Pa. 2013) (citing *Mayer v. Belichick*, 605 F.3d 223, 230 (3d Cir. 2010)). Finally, a court evaluating a motion to dismiss must "draw on its judicial experience and common sense." *United States ex rel. Bookwalter v. UPMC*, 946 F.3d 162, 177 (3d Cir. 2019) (quoting *Iqbal*, 556 U.S. at 679).

### b. First Amendment and RLUIPA

The DOC again argues that its elimination of inmate-purchased optional menu items for celebration of the holidays at issue does not amount to a substantial burden on Mr. Williams's religious beliefs, and therefore, Mr. Williams's RLUIPA claims should be dismissed. (ECF No. 37, at 7.) Further, the DOC argues that since Mr. Williams's RLUIPA claims should be dismissed and RLUIPA was enacted to create broader protections not provided by the First Amendment, Mr.

Williams's First Amendment claims should also be dismissed, as if the former fails, so does the latter. (ECF No. 37, at 10.).

First, the Court's analysis above as to the factors for the grant of a preliminary injunction necessarily addresses the Motion to Dismiss the RLUIPA claim. For the reasons stated above, the Complaint more than adequately states a claim for relief under that federal statute, and the Motion to Dismiss would be denied as to that statutory claim.

As the Mr. Williams' Constitutional claims, free exercise challenges to prison policies are analyzed under the Supreme Court's test from *Turner v. Safley*, 482 U.S. 78, 89–90 (1987). First, there must be a "valid, rational connection between the prison regulation and the legitimate governmental interest put forward to justify it." *Turner*, 482 U.S. at 89. Next, a court must consider "whether there are alternative means of exercising the right that remain open to prison inmates." *Id.* at 90. Third, the Court must consider "the impact accommodation of the asserted constitutional right will have on guards and other inmates, and on the allocation of prison resources generally" while the Supreme Court explains that "few changes will have no ramifications on the liberty of others or on the use of the prison's limited resources for preserving institutional order." *Id.* Last, the fourth factor considers the availability of "obvious, easy alternatives," because "if an inmate claimant can point to an alternative that fully accommodates the prisoner's rights at *de minimis* cost to valid penological interests, a court may consider that as evidence that the regulation does not satisfy the reasonable relationship standard." *Id.* at 90–91.

The DOC largely relies on *Banks v. Sec. Penn. Dept. of Corrections*, 601 Fed. Appx. 101 (3d Cir. 2015). However, the Third Circuit declared that plaintiff's RLUIPA claim in that case to be moot because the inmate had been transferred to a different facility. *Banks*, 601 Fed. Appx. at 103. Further, the indigent inmate plaintiff in that case seemed to complain of being treated

differently than the non-indigent inmates; however, the reasoning from the Third Circuit on that issue is not applicable here because Mr. Williams has been able to pay for the optional menu items in the past. *Id.* at 104. Moreover, the plaintiff in *Banks* was essentially requesting a new policy whereby indigent Muslim prisoners were to be placed in debt to participate in the feasts of Eid al-Fitr and Eid al-Adha when he was confronted with the ceremonial meals policy. *Id.* In contrast, Mr. Williams does not ask the DOC to implement a new policy or approach by the DOC, he instead asks that the DOC reimplement a previously existing policy.

Mr. Williams argues that the DOC's arguments fail under the *Turner* analysis. Under the first prong of the *Turner* test, Mr. Williams argues that the DOC cannot establish the "adequate connection" between its financial and administrative burdens and the change in the policy. (ECF No. 42, at 20.) For the second *Turner* factor, Mr. Williams argues that by eliminating the ceremonial meals in issue here, the DOC prevents him from celebrating his holidays in the manner required by Islam, thereby violating his beliefs. (*Id.* at 21.) The third *Turner* factor, Mr. Williams argues, also weighs in his favor because the DOC failed to demonstrate that ceremonial meals provide unique problems beyond normal institutional challenges. (*Id.*) For the fourth factor, Mr. Williams explains that since the DOC has previously provided ceremonial meals for many years, the alternative it should provide currently is to reinstate ceremonial meals.

The key point here is the procedural status of the case relative to the Motion to Dismiss. The DOC's arguments are in many ways fact bound, notwithstanding the limited discovery record now before the Court. Based on that record, the Court cannot conclude as a matter of law that Mr. Williams does not at least state a claim for relief under the Constitutional provisions he relies upon. As set out at length above as to the request for preliminary injunctive relief, the record now before the Court demonstrates that Mr. Williams at least states a claim for relief under the First and

Fourteenth Amendments. He has plausibly alleged that there is an insufficient administrative burden on the DOC that would support the Little Memo's processes; he sufficiently alleges that his inability to celebrate the two  specific holidays at issue here is a substantial burden on his religious exercises; the existence of the mechanisms in the 2023 Passover Memo would seem, at least facially, to belie the DOC's assertions that the *status quo ante* imposed unique DOC operational burdens, and that Passover Memo would also seem to demonstrate that there is a readily available alternative to the provisions of the Little Memo for these purposes.

For the reasons noted above, considering the allegations of the Complaint, even in the context of the limited discovery record (the consideration of which would seem to ordinarily convert the Motion to Dismiss to one for summary judgment), the Court concludes that applying the *Turner* factors to the allegations of the Complaint demonstrates that Mr. Williams does at least state a claim for relief.

### c.  Qualified Immunity

The Defendants argue that the doctrine of qualified immunity bars the claims against them because the shift from ceremonial meals to fellowship meals did not violate a clearly established right of Muslims to have the specific foods Mr. Williams requests. (ECF No. 24, at 16; ECF No. 37, at 13.)

Qualified immunity shields governmental officials from suits seeking to impose liability for money damages if their conduct "does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. *Peroza-Benitez v. Smith*, 994 F.3d 157, 164 (3d Cir. 2021). Qualified immunity applies when officials are sued in their individual capacities for money damages. *Elder v. Holloway*, 510 U.S. 510, 513 (1994). The doctrine balances two important interests of "the need to hold public officials accountable when they exercise power

irresponsibility and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably." *Id.* When analyzing a claim of qualified immunity, the court must consider "(1) whether the plaintiff sufficiently alleged the violation of a constitutional right, and (2) whether the right was 'clearly established' at the time of the official's conduct." *L.R. v. Sch. Dist. of Phila.*, 836 F.3d 235, 241 (3d Cir. 2016). To be clearly established, the right must be apparent in a way that "every reasonable official would understand that what he is doing is unlawful." *James v. N.J. State Police*, 957 F.3d 165, 169 (3d Cir. 2020). And qualified immunity applies to constitutionally cognizable claims, and not statutory claims. *Brown v. Grabowski*, 922 F.2d 1097, 1100 (3d Cir. 1990).

Qualified immunity is not a defense to injunctive relief. *See Hill v. Borough of Kutztown*, 455 F.3d 225, 244 (3d Cir. 2006) ("qualified immunity is available only for damages claims–not for claims requesting prospective injunctive relief"); *Newman v. Burgin*, 930 F.2d 955, 958 (1st Cir. 1991) ("[w]hen a civil-rights plaintiff asks for *damages*, the defendants can assert a 'qualified immunity' defense . . . [w]hen a civil-rights plaintiff asks for an *injunction*, however, the defendants cannot assert this 'qualified immunity' defense").

At this point, the Court will not definitively resolve the application of qualified immunity. It may ultimately bar Mr. Williams's claims for money damages against the named Defendants in their individual capacities, but at this juncture, the issue is whether the Motion to Dismiss has merit in terms of barring the preliminary injunctive relief that Mr. Williams seeks. It does not, and for these purposes, the application of the doctrine of qualified immunity need not be further resolved at this juncture.[8]

---

[8] Since Defendant George Little is no longer the acting secretary of the DOC, any implementation of the Little Memo turns only on Secretary Harry's actions. Mr. Little is not a "real party in interest" as to the request for preliminary injunctive relief, and the Court's Order will only be directed as to Harry.

IV.     **<u>CONCLUSION</u>**

Before the Court are two Motions, one for a Preliminary Injunction, and one Motion to Dismiss. The Court concludes that Mr. Williams has met his burden for the entry of a preliminary injunction on his RLUIPA claim, and for the reasons stated, the Motion to Dismiss will be DENIED without prejudice. By separate Order, the Court will issue a preliminary injunction directing the Defendant Harry, in her official capacity, to take all necessary steps to reinstate the status quo as it existed for calendar year 2022 as to the observance of the Eid holidays at SCI-Albion and by Mr. Williams in particular. The Motion for Preliminary Injunction will therefore be GRANTED to that extent.

/s Mark R. Hornak
Mark R. Hornak
Chief United States District Judge

Dated:  June 23, 2023
cc:      All Counsel of Record